IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHARLES BLUME, individually and on behalf of all others similarly situated, | )<br>)<br>) |
| Plaintiff, | )<br>)<br>) |
| v. | )   COLLECTIVE ACTION<br>)<br>) |
| INTERNATIONAL SERVICES, INC. f/k/a INTERNATIONAL PROFIT ASSOCIATES, INC. a/k/a I.P.A.; ROI-NORTH AMERICA, INC.; GPS USA, INC.; INTEGRATED BUSINESS ANALYSIS, INC., a/k/a IBA USA, | )<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## COMPLAINT

Plaintiff, individually and on behalf of all others similarly situated, by and through his counsel, for his Complaint against Defendants, hereby states and alleges as follows:

1. Defendants provide on-site business consulting services to businesses. Defendants' practice and policy is to deny wages and overtime pay to its Senior Business Consultants ("SBCs"). The deliberate failure of Defendants to pay their employees their earned wages and overtime compensation violates the Fair Labor Standards Act ("FLSA").

2. Plaintiff was formerly employed as an SBC by Defendants. This lawsuit is brought as a collective action under the FLSA to recover unpaid wages owed to Plaintiff and all other similarly situated employees nationwide.

{}

## JURISDICTION AND VENUE

3. The FLSA authorizes court actions by private parties to recover damages for violation of the FLSA's wage and hour provisions. Jurisdiction over Plaintiff's FLSA claim is based on 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

4. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants are subject to personal jurisdiction in this District and a substantial part of the events and/or omissions giving rise to this claim occurred in this District.

## PARTIES

5. Defendants are each Illinois corporations with their principal place of business in Buffalo Grove, Illinois. Defendants are all subject to the same corporate structure, have the same management, the same ownership and, jointly controlled all relevant aspects of the SBCs' terms and conditions of employment. During the relevant time period, Defendants conducted, and continue to conduct, business in the State of Missouri and nationwide.

6. Plaintiff is a resident of St. Louis County, Missouri. Plaintiff was employed by Defendants as an SBC from approximately 1999 to July 2010. Plaintiff's Consent to Become a Party Plaintiff pursuant to 29 U.S.C. § 216(b) is attached hereto as Exhibit A.

## GENERAL ALLEGATIONS

7. SBCs perform business consultant services to small-to-medium sized businesses, who are the primary clients of Defendants. Defendants' clients are sold business consultant services by representatives of Defendants, and are told in advance

{}

how many hours the agreed-upon services should take. Defendants charge clients based upon the hours billed by the SBC.

8. Defendants have clients nation-wide. Each week SBCs travel from their home to the client's location. SBCs must schedule their travel to enable them to arrive at their assigned hotel the evening before the first day of the project. Often SBCs travel on Sunday afternoons.

9. Once at the customer's location, the SBCs evaluate the business, train and educate business owners, and draft and revise business policies. According to Defendants' publicly-available website, the analysis that is done by the SBC will provide an exhaustive business review, from the perspective of how the business is performing in relation to prior years and how it is performing in relating to other companies of a similar size and type.

10. Defendants do not accurately record or keep the time SBCs work, but instead only tracks the hours billed by the SBCs.

11. Defendants instruct SBCs to bill only for time spent performing work at the client's location. Defendants do not pay SBCs for the time that is not billed to the client.

12. On a regular basis, SBCs must perform work away from the client's location in order to complete the services that were promised the client. For example, SBCs commonly draft and complete spreadsheets at night in their hotel room.

13. Defendants also require that SBCs complete some work which is not billed or otherwise compensated. For example, Defendants require a pre-meeting between the Project Manager and the SBC at a hotel before the project begins. That

{}

meeting is to take place one hour before the project is to begin. SBCs are not instructed to bill for that time, during which SBCs and Project Managers review the particulars of the project.

14. Defendants also expect SBCs to attend scheduled, uncompensated weekend meetings in a hotel in Chicago. SBCs are required to fly from their last project to Chicago on Friday, and fly from Chicago to their next project on Sunday. During the meetings SBCs would "learn about new services, review problems and solutions, and offer suggestions concerning the department or work in the field. . . . Failure to attend a required meeting may result in disciplinary action upon to and including termination."

15. As part of their job, SBCs travel to client's locations, usually by air but occasionally by car. Travel arrangements are often made by Defendants' Travel Department. On occasion, the SBC would make his or her own travel arrangements. SBCs are to be at the Hotel of Record ("HOR") by Sunday evening, the day before a project is to begin. SBCs travel home on Friday unless they are required to travel to Chicago for a meeting.

16. If an SBC is not booked for a project for the coming week by Friday afternoon, Defendants direct the SBC to go to his or her home airport on Sunday afternoon to wait for a project assignment. After receiving a project assignment, the SBC immediately travels to the city in which the client was located. The SBC is told he/she has to be at the airport ready for a departing flight by the time the projects are assigned in the early evening. Defendants do not release SBCs to return home until all available projects are assigned, which may be as late as 8:00 p.m. If the SBC was

{}

not assigned a project, he/she would be released and could return home, but would be directed to return to the airport the following afternoon where additional assignments would be made. SBCs could be directed to come to the airport Sunday, Monday, Tuesday and Wednesday afternoons.

17. SBCs were not compensated for any of their time in the airport waiting to see if Defendants scheduled them for a project.

18. Defendants do not pay SBCs for time spent traveling to or from the client's location.

19. Defendants expect SBCs to work at least 50 hours per week, which requirement is set out in the Travel Protocol, attached hereto as Exhibit B.

20. Defendants do not pay SBCs overtime.

21. In 2011, the Department of Labor investigated Defendants' practices and determined that SBCs were entitled to overtime. IPA refused to voluntarily pay the SBCs the compensation the Department of Labor claimed was due.

22. The net effect of Defendants' policy and practice is that Defendants willfully fail to pay overtime and minimum wage compensation, and willfully fails to keep accurate time records to save payroll costs. Defendants enjoy ill-gained profits at the expense of its employees.

## COLLECTIVE ACTION ALLEGATIONS

23. Plaintiff brings this FLSA case as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b).

24. Plaintiff, individually and on behalf of other similarly situated employees, seeks relief on a collective basis challenging, among other FLSA

{}

violations, Defendants' practice of failing to accurately record all hours worked and failing to pay employees for all hours worked, including overtime and minimum wage compensation. The number and identity of other plaintiffs yet to opt-in and consent to be party plaintiffs may be determined from the records of Defendants, and potential class members may easily and quickly be notified of the pendency of this action.

## COUNT I

**Violation of the Fair Labor Standards Act of 1938**

25. Plaintiff reasserts and re-alleges the allegations set forth above.

26. At all times material herein, Plaintiff has been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. § 201, et seq.

27. The FLSA regulates, among other things, the payment of overtime pay by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 207(a)(1).

28. Defendants are subject to the overtime pay requirements of the FLSA because they constitute an enterprise engaged in interstate commerce and their employees are engaged in commerce.

29. Defendants violated the FLSA by failing to pay for overtime and for all hours worked by SBCs. In the course of perpetrating these unlawful practices, Defendants have also willfully failed to keep accurate records of all hours worked by its employees.

{}

30. Section 13 of the FLSA, codified at 29 U.S.C. § 213, exempts certain categories of employees from overtime pay obligations. None of the FLSA exemptions apply to Plaintiff or SBCs.

31. Plaintiff and all similarly situated employees are victims of company-wide compensation policies as described above. These policies, in violation of the FLSA, have been applied to all SBC's employed by Defendants. Upon information and belief, Defendants have applied these policies to all SBC's nationwide.

32. Plaintiff and all similarly situated employees are entitled to damages equal to the mandated overtime premium pay within the three years preceding the filing of this Complaint, plus periods of equitable tolling, because Defendants acted willfully and knew, or showed reckless disregard of the fact, that their conduct was prohibited by the FLSA.

33. Defendants have acted neither in good faith nor with reasonable grounds to believe that is actions and omissions were not a violation of the FLSA, and as a result thereof, Plaintiff and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime pay described pursuant to Section 16(b) of the FLSA, codified at 29 U.S.C. 216(b). Alternatively, should the Court find Defendants acted in good faith in failing to pay overtime pay, Plaintiff and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

34. As a result of the aforesaid violations of the FLSA's overtime pay provisions, overtime compensation has been unlawfully withheld by Defendants from Plaintiff and all similarly situated employees. Accordingly, Defendants are liable

{}

pursuant to 29 U.S.C. 216(b), together with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

WHEREFORE, Plaintiff, on behalf of himself and all similarly-situated employees, demands judgment against Defendants and prays for: (1) compensatory damages; (2) liquidated damages; (3) attorneys' fees and costs as allowed by Section 16(b) of the FLSA; (4) pre-judgment and post-judgment interest as provided by law; and (5) such other relief as the Court deems fair and equitable.

Dated: January 31, 2012  Respectfully submitted,

LEAR WERTS LLP

*/s/ Todd C. Werts*
_____
Bradford B. Lear, Bar No. MO53204
Todd C. Werts, Bar No. MO53288
Sander C. Sowers, Bar No. MO57776
2003 W. Broadway, Ste. 107
Columbia, MO 65203
Telephone: 573-875-1991
Facsimile: 573-875-1985
Email: lear@learwerts.com
Email: werts@learwerts.com
Email: sowers@learwerts.com

Michele L. Hornish, *Pro Hac Vice Forthcoming*
203 N. LaSalle St., Ste. 2100
Chicago, IL 60601
Telephone: 312-558-1366
Facsimile: 573-875-1985
Email: hornish@learwerts.com

**ATTORNEYS FOR PLAINTIFF**

{}