```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                           EASTERN DIVISION
```

CHARLES BLUME, individually and            )
on behalf of all others similarly          )
situated,                                  )
                                           )
            Plaintiff,                     )
                                           )
     v.                                    )    No. 4:12 CV 165 DDN
                                           )
INTERNATIONAL SERVICES, INC.,              )
et al.,                                    )
                                           )
            Defendants.                    )

**MEMORANDUM AND ORDER**

This action is before the court upon the motions of defendants International Services, Inc., f/k/a International Profit Associates, Inc., a/k/a ROI-North America, Inc.; GPS USA, Inc.; and Integrated Business Analysis, Inc., a/k/a IBA USA, to dismiss for lack of personal jurisdiction (Doc. 10), to dismiss for improper venue (Doc. 11), and to transfer (Doc. 13). The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 17.) Oral argument was heard on April 5, 2012.

**I.  BACKGROUND**

On January 31, 2012, plaintiff Charles Blume commenced this action, individually and on behalf of all others similarly situated, against his former employer, defendants International Services, Inc., f/k/a International Profit Associates, Inc., a/k/a ROI-North America, Inc.; GPS USA, Inc.; and Integrated Business Analysis, Inc., a/k/a IBA USA (collectively, defendants),[1] for unpaid wages. (Doc. 1.) According to the complaint, defendants are Illinois corporations with their principal

---

[1] In his complaint, plaintiff alleges that defendants "are all subject to the same corporate structure, have the same management, the same ownership[,] and[] jointly controlled all relevant aspects of [his and the prospective opt-in plaintiffs'] terms and conditions of employment." (Doc. 1 at ¶ 5.)

place of business in Buffalo Grove, Illinois. (Id. at ¶ 5.) Defendants are in the business of providing on-site business consulting services to small-to-medium sized businesses. (Id. at ¶¶ 1, 7) Plaintiff, a resident of St. Louis County, Missouri, worked as a Senior Business Consultant (SBC) for defendants from 1999 to 2010. (Id. at ¶¶ 2, 6.) SBCs travel to clients nationwide to perform consulting services. (Id. at ¶¶ 7-9.) Defendants' clients are charged based upon the number of hours billed by the SBCs. (Id. at ¶ 7.)

Plaintiff alleges that defendants do not accurately record the time that their SBCs work and instead track only the hours billed by their SBCs. (Id. at ¶ 10.) Defendants instruct their SBCs to bill only for time spent working at client locations, even though the SBCs must perform work away from client locations and defendants pay their SBCs only for time billed to clients. (Id. at ¶¶ 11-12.) Defendants also require their SBCs to perform other, non-compensated work, including attending "pre-meetings" before the beginning of a project and attending weekend meetings in Chicago, Illinois. (Id. at ¶¶ 13-14.) SBCs are also required to be at their respective "Hotel of Record" by the Sunday evening before a project is set to begin. (Id. at ¶ 15.) SBCs travel home on Fridays unless they are required to travel to Chicago for a meeting. (Id.) If an SBC is not booked by Friday afternoon for a project beginning during the coming week, the SBC must go to his or her home airport on Sunday afternoon to wait for a project assignment. (Id. at ¶ 16.) Upon receiving a project assignment, the SBC immediately travels to the client's city. (Id.) The SBC must stay at the airport until as late as 8:00 p.m. waiting to be assigned a project. (Id.) If the SBC is not assigned a project, he or she is released and allowed to return home, but is required to return to the airport the following afternoon to again await assignment of a project. (Id.)

Plaintiff alleges that he and all other SBCs were not compensated for their time waiting at airports or traveling to and from client locations. (Id. at ¶¶ 17, 18.) Plaintiff alleges that defendants expect their SBCs to work at least 50 hours each week but do not pay their SBCs overtime wages. (Id. at ¶¶ 19-20.) Plaintiff also alleges that in 2011, the Department of Labor investigated defendants' practices and determined

that defendants' SBCs were entitled to overtime wages, which defendants refused to pay voluntarily.  (Id. at ¶ 21.)

Plaintiff commenced this action as an "opt-in" collective action under 29 U.S.C. § 216(b).  (Id. at ¶ 23.)  Plaintiff seeks individual and collective relief from defendants' method of record keeping and for defendants' failure to pay overtime wages and wages for all hours worked.  (Id. at ¶ 24.)

In Count I, plaintiff alleges that defendants violated the federal Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-19, by failing to pay SBCs overtime wages and wages for all hours worked.  (Id. at ¶¶ 25-34.)  Plaintiff alleges that defendants have wilfully failed to keep accurate records of all hours worked by SBCs.  (Id. at ¶ 29.)  Plaintiff seeks compensatory damages, liquidated damages, attorney's fees, costs, pre-judgment interest, and post-judgment interest.  (Id. at ¶¶ 33-35.)

## II.  MOTIONS TO DISMISS

Defendants move to dismiss under Rule 12(b)(2) for lack of personal jurisdiction and under Rule 12(b)(3) for improper venue.  Defendants argue that the applicable venue statute, 28 U.S.C. § 1391, requires that the court have specific jurisdiction over a defendant,[2] and that dismissal is necessary because the court lacks specific jurisdiction over them.  Defendants alternatively argue that the court also lacks general jurisdiction over them and, as such, the Eastern District of Missouri is not the proper forum for this action.  (Docs. 10-12.)

Plaintiff responds that defendants have substantial contacts with Missouri and, pursuant to Missouri's long-arm statute, the court has personal jurisdiction over them.  Plaintiff also argues that defendants consented to jurisdiction by registering with the Missouri Secretary of State and by designating an agent in Missouri for service of process.  (Doc. 18.)

---

[2] See 28 U.S.C. § 1391(c)(2) ("For all venue purposes . . . an entity with the capacity to sue and be sued . . . shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction *with respect to the civil action in question* . . . ." (emphasis added)).

Defendants reply that the court does not have specific jurisdiction over them because the allegations in plaintiff's complaint do not arise out of their contacts with Missouri. Defendants also argue that under Missouri law, they have not consented to jurisdiction by registering with the Missouri Secretary of State or by appointing a registered agent in Missouri for service of process. (Doc. 21.)

### III. MOTION TO TRANSFER

Defendants alternatively move to transfer this action to the United States District Court for the Northern District of Illinois. Defendants argue that plaintiff could have originally brought this action in the Northern District of Illinois and that the Northern District of Illinois is a more convenient venue for the parties and the possible witnesses. (Docs. 13-14.)

Plaintiff responds that his decision to commence this action in the Eastern District of Missouri should be accorded great weight. Plaintiff also argues that defendants hope to shift any inconvenience from them onto him and the prospective opt-in plaintiffs. Plaintiff further argues that the Eastern District of Missouri is a more convenient forum for most of the possible witnesses. (Doc. 19.)

Defendants reply that plaintiff's choice of forum should be afforded little weight and that the Northern District of Illinois would be a more convenient forum for most of the parties, including the prospective opt-in plaintiffs, and most of the possible witnesses. (Doc. 22.)

### IV. DISCUSSION

The court may transfer a case pursuant to 28 U.S.C. § 1404(a)[3] even without personal jurisdiction over a defendant.[4] <u>Goldlawr, Inc. v.</u>

---

[3]"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

[4]Defendants do not challenge the court's subject matter jurisdiction over the action, the lack of which would have precluded transfer. <u>See</u>
(continued...)

- 4 -

Heiman, 369 U.S. 463, 465-67 (1962); Follette v. Wal-Mart Stores, Inc., 41 F.3d 1234, 1238 (8th Cir. 1994); Election Sys. & Software, Inc. v. Avante Int'l Tech. Corp., No. 8:07CV375, 2008 WL 943338, at *2 (D. Neb. Apr. 7, 2008); Naegler v. Nissan Motor Co., 835 F. Supp. 1152, 1156 (W.D. Mo. 1993).

Thus, the court first considers defendants' motion to transfer the action to the United States District Court for the Northern District of Illinois. See Miller v. Hambrick, 905 F.2d 259, 262 (9th Cir. 1990) (explaining that transfer is often more appropriate than dismissal because often "dismissal of an action that could be brought elsewhere is 'time-consuming and justice-defeating' " (quoting Goldlawr, 369 U.S. at 467)); accord Poku v. FDIC, 752 F. Supp. 2d 23, 27 (D.D.C. 2010).

**A. Motion to Transfer**

A district court has the authority to transfer a case to another district when transfer would further (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interest of justice. 28 U.S.C. § 1404(a). The court must consider each of these factors but is not limited by them; determining whether transfer is appropriate "require[s] a case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors." Terra Int'l, Inc. v. Miss. Chem. Corp., 119 F.3d 688, 691 (8th Cir. 1997); accord In re Apple, Inc., 602 F.3d 909, 912 (8th Cir. 2010) (per curiam). Other relevant factors can include: (4) the accessibility to records and documents; (5) the location of the alleged conduct; (6) the law of each forum; (7) issues of judicial economy; (8) the plaintiff's choice of forum; (9) the costs of litigating in each forum; (10) each party's ability to enforce a judgment; (11) obstacles to a fair trial; (12) conflict of law issues; and (13) a court's expertise with the law of the forum. Terra, 119 F.3d at 696. The party seeking transfer bears the burden of showing

---

⁴(...continued)
Integrated Health Servs. v. THCI Co., 417 F.3d 953, 957 (8th Cir. 2005) ("[A] court without subject matter jurisdiction cannot transfer a case to another court under 28 U.S.C. § 1404(a).").

that the balance of factors "strongly" favors transfer. <u>Graff v. Qwest Commc'ns Corp.</u>, 33 F. Supp. 2d 1117, 1121 (D. Minn. 1999).

Initially, the parties agree that plaintiff could have commenced this action in the United States District Court for the Northern District of Illinois, as his claim arises under federal law and defendants' corporate headquarters is located within the Northern District of Illinois. (Doc. 14-1 at ¶ 5); <u>see</u> 28 U.S.C. § 1331 (federal question subject matter jurisdiction); § 1391(b)(1) and (c)(2) (venue and residency of corporate defendants). Thus, transfer to the Northern District of Illinois is potentially available under § 1404(a). <u>See</u> § 1404(a) (the court may transfer only to a district in which the action could have originally been brought).

### 1.  Convenience of the Parties

Concerning the convenience of the parties, defendants argue that litigating in the Northern District of Illinois would be more convenient for them and for more of the potential opt-in plaintiffs. Plaintiff argues that litigating this case in the Northern District of Illinois would be more convenient only for defendants, and that defendants seek to shift the inconvenience from them onto him.

In support of their argument for transfer, defendants note that their corporate headquarters is in Buffalo Grove, Illinois, which is within the Northern District of Illinois. (Doc. 14-1 at ¶ 15.) Defendants also note that approximately 712 of their 1,450 employees work in Buffalo Grove; at least 30 of their SBCs currently reside in the Chicago, Illinois area; and only plaintiff and 13 other SBCs are currently residents of Missouri. (<u>Id.</u> at ¶¶ 24-27; Doc. 22-1 at ¶ 9.)

Whether transfer would be more convenient for the potential opt-in plaintiffs is, at this stage of the proceedings, only speculation. At this time, there is only one plaintiff; the opt-in plaintiffs are only *potential* parties. While, as defendants argue, more potential parties may reside in the Northern District of Illinois than in the Eastern

District of Missouri,[5] there is no way of knowing whether more SBCs from the Northern District of Illinois will actually opt-in than SBCs from the Eastern District of Missouri.  For that matter, there is no way of knowing whether *any* SBCs from the Northern District of Illinois will opt-in as parties to this action.

If SBCs who reside in the Northern District of Illinois or elsewhere besides Missouri opt-in, the convenience-of-the-parties factor will need further consideration.  At this time, however, plaintiff is the only claimant in this action, and he resides in the Eastern District of Missouri. Therefore, transferring the case to the Northern District of Illinois would, as plaintiff argues, only shift the burden from defendants onto plaintiff.  E.g., Battenfeld Techs., Inc. v. Birchwood Labs., Inc., No. 2:11-cv-04099-NKL, 2011 WL 4088901, at *2 (W.D. Mo. Sept. 14, 2011) ("The Court will not transfer venue based on the convenience factors if the result would be merely to shift the inconvenience from one party to another.").

The record is insufficient for the court to determine the likelihood that more plaintiffs will opt-in from the Northern District of Illinois than from the Eastern District of Missouri or elsewhere so as to tip the convenience scale in favor of transfer.  E.g., Shultz v. Hyatt Vacation Mktg. Corp., No. 10-CV-04568-LHK, 2011 WL 768735, at *7 (N.D. Cal. Feb. 28, 2011) ("Given that there is no way to know now whether these putative class members will eventually play a role in this case, it would be unduly speculative to place significant weight on their convenience.").

Thus, the convenience of the parties does not weigh in favor of transfer at this time.

### 2. Convenience of the Witnesses

Concerning the convenience of the witnesses, defendants contend that their primary potential witnesses include their management-level

---

[5]This, too, may not be accurate, as defendants proffer information relating only to *current* SBCs.  See (Doc. 14-1 at ¶ 27; Doc. 22-1 at ¶ 9.)  However, the potential opt-in plaintiffs are not limited to defendants' *current* SBCs; plaintiff himself is no longer employed by defendants.  See (Doc. 1 at ¶¶ 6, 24.)

corporate employees, executive-level corporate employees, human resources department employees, and payroll department employees. These employees work at defendants' corporate headquarters and reside in the Buffalo Grove, Illinois area.[6] (Doc. 14-1 at ¶¶ 16-17.)

As with the convenience-of-the-parties factor, the court is unable to determine at this time whether the convenience of the witnesses weighs in favor of transfer. Although defendants have identified potential witnesses who work and reside in the Northern District of Illinois, it may be that more SBCs residing in the Eastern District of Missouri or elsewhere opt-in as plaintiffs and testify at trial than SBCs residing in the Northern District of Illinois. Moreover, SBCs could decline to opt-in as plaintiffs but nonetheless retain relevant information and testify as non-party witnesses. Defendants currently employ approximately 420 SBCs; the number of past SBCs is unknown. (Doc. 14-1 at ¶ 26.) Given their number and importance, depending on their involvement in this action, the convenience of the SBCs is of substantial significance.

As discussed above, the SBCs involvement in this action and their convenience is too speculative to evaluate at this time. E.g., Joyner v. Solvay Pharm., Inc., No. 3:10CV36-HEH, 2010 WL 2163876, at *3 (E.D. Va. May 27, 2010) (explaining that witness convenience did not justify transfer at that time and declining "to speculate as to what added convenience the [alternate] venue would provide if [the] claim [were to] become[] a collective action"); Clayton v. Heartland Res., Inc., No. 3:08-cv-0513, 2008 WL 2697430, at *5 (M.D. Tenn. June 30, 2008) (declining to speculate as to witness convenience where "[n]either party . . . provided the court with the precise numbers of witnesses located in [either state]" and where "witnesses located outside of both [states] [would] be required to travel to trial in any circumstance"); Talbot v. Defendant St. Mary's Hosp. & Med. Ctr., Inc., No. 07-cv-02669-ZLW-CBS,

---

[6] To the extent so required, defendants have specifically identified these potential witnesses. (Doc. 22-1 at ¶¶ 4-8); see Standard Office Sys. v. Ricoh Corp., 742 F. Supp. 534, 538 (W.D. Ark. 1990) ("The party seeking the transfer must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." (citation omitted)).

2008 WL 1766644, at *2 (D. Colo. Apr. 16, 2008) ("[A]t this early stage the Court cannot determine the relative materiality of the two broad categories of witnesses, and it has not yet been determined which and how many of these witnesses actually will testify.").

Beyond their numbers, the SBCs' testimony also appears to be at least as important as defendants' corporate employees' testimony. See Terra, 119 F.3d at 696 (agreeing with the district court that "sheer numbers of witnesses will not decide which way the convenience factor tips" (citation omitted)); Preston v. Missouri-Nebraska Express, Inc., No. 91-0056-CV-W-6, 1991 WL 626751, at *2 (W.D. Mo. Oct. 16, 1991) ("[W]itness convenience and availability is not a numbers game where the only consideration is where the most witnesses are located. The nature and quality of the witnesses' testimony must also be taken into account.").

Defendants note the inconvenience and disruption to their business operations that would be caused by litigating this action in the Eastern District of Missouri rather than in the Northern District of Illinois. See (Doc. 14-1 at ¶¶ 15, 18-19.) Courts have afforded similar arguments varying weight. Compare Carnegie Mellon Univ. v. Marvell Tech. Group, Ltd., No. 09-290, 2009 WL 3055300, at *4 (W.D. Pa. Sept. 21, 2009) (stating that the potential disruption to the defendants' business operations and to the defendants' employees' schedules were irrelevant to the transfer analysis because these factors "[did] not concern nonparty witnesses, and [did] not claim actual unavailability for trial") with Wayne Cnty. Emps.' Ret. Sys. v. MGIC Inv. Corp., 604 F. Supp. 2d 969, 976 (E.D. Mich. 2009) ("There is authority that suggests consideration should also be given to the potential disruption of the defendant's business caused by the absence of its employees from the jurisdiction during the litigation." (citation omitted)). Regardless, given the uncertainty as to the involvement, residency, and convenience of defendants' currently-employed SBCs, the potential disruption to defendant's business operations is itself unclear.

Defendants also assert that the United States District Court for the Northern District of Illinois is in a greater position to ensure the appearance of witnesses, namely defendants' corporate employees, at

- 9 -

trial.  However, "the availability of compulsory process is not an overriding concern because, as a practical mater, defendant's employees will be available to testify by virtue of their employment relationship." Sirico v. RIH Acquisitions NJ, LLC, No. 1:06-cv-3262-ENV-RLM, 2006 WL 3370399, at *2 (E.D.N.Y. Nov. 20, 2006); accord Hyman v. Hill & Assocs., No. Civ.A. 05 C 6486, 2006 WL 328260, at *3 (N.D. Ill. Feb. 9, 2006) ("[E]mployees of parties are irrelevant to the convenience analysis.").

In short, whether litigating this action in the Northern District of Illinois would be more convenient for the witnesses cannot be determined at this time.  Given the importance of this factor,[7] the court avoids speculating as to who the witnesses will be, how important their testimony will be, and ultimately, whether the convenience of the witnesses weighs in favor of transfer.

### 3.  Location of Documentary Evidence

Defendants also argue that the case should be transferred because their corporate records related to their wage and hour practices—employee time sheets, payroll records, human resources records, and pay policies—are located at their corporate headquarters in Buffalo Grove.

"[W]ith the advent of photocopying and other means of document reproduction, the location of documents is no longer entitled to much weight in the transfer of venue analysis, especially where, as here, the parties have the financial capability to complete the necessary copying." Jones v. Casey's Gen. Stores, Inc., No. C07-4043-MWB, 2007 WL 2479666, at *4 (N.D. Iowa Aug. 30, 2007); see also Johnson v. VCG Holding Corp., 767 F. Supp. 2d 208, 216 (D. Me. 2011) (noting that the location-and-availability-of-documents factor "seems like a holdover from a time when businesses kept important records, including payroll records, in paper and the difficulty of physically accessing the paper documents and the burden of transporting them across jurisdictions could be onerous");

---

[7]E.g., CitiMortgage, Inc. v. Somonich Corp., 4:10 CV 1568 HEA, 2011 WL 4600698, at *1-2 (E.D. Mo. Oct. 3, 2011) (stating that this is "the most important factor in passing on a motion to transfer under § 1404(a)"); Ozarks Coca-Cola/Dr. Pepper Bottling Co. v. Coca-Cola Co., No. 06-03056-CV-W-GAF, 2006 WL 696461, at *4 (W.D. Mo. Mar. 17, 2006) (same).

Marcus v. Am. Contract Bridge League, 562 F. Supp. 2d 360, 366 (D. Conn. 2008) ("[T]he location of the relevant documents is a non-issue in today's world because copy machines, electronic discovery, and emails make it much easier to obtain documents at a distance.").

Assuming that the documentary evidence is located primarily within the Northern District of Illinois and thus favors transfer,[8] this factor is nonetheless entitled to little weight.

### 4.  Plaintiff's Choice of Forum

The parties dispute the proper weight that should be afforded to plaintiff's choice of forum. Compare Jewell v. Aaron's, Inc., No. 1:11-cv-02314-DCN, 2012 WL 589488, at *4 (N.D. Ohio Feb. 22, 2012) (noting, in an FLSA collective action, that the "[p]laintiff's choice of forum does not tip the balance because it is not a single-plaintiff action") with Hernandez v. Tex. Capital Bank, N.A., No. 07-0726-CV-W-ODS, 2008 WL 342758, at *4 (W.D. Mo. Feb. 5, 2008) (affording the plaintiffs' choice of forum significant weight in an FLSA collective action because the "opt-in structure suggests that Congress intended to give plaintiffs considerable control over the bringing of a FLSA action" (citation omitted)).

Regardless of the weight to be afforded, plaintiff's choice of forum favors litigating this action in the Eastern District of Missouri.

### 5.  Balance of Factors

For the reasons discussed above, defendants have not met their burden of showing that the § 1404(a) factors "strongly" favor transfer of this action to the Northern District of Illinois at this time. Graff, 33 F. Supp. 2d at 1121. Defendants may refile their motion when the involvement, residency, and convenience of their past and current SBCs becomes more apparent.

Therefore, defendants' motion to transfer (Doc. 13) is denied without prejudice.

---

[8]This, of course, does not take into account plaintiff's documentary evidence or the documentary evidence that the opt-in plaintiffs may possess outside of the Northern District of Illinois.

**B.    Motions to Dismiss**

   1.   28 U.S.C. § 1391

   Defendants first argue that 28 U.S.C. § 1391,[9] which "govern[s] the venue of all civil actions brought in district courts of the United States," requires that the court have specific jurisdiction over a defendant for venue to be appropriate in the court's district. 28 U.S.C. § 1391(a)(1). Section 1391(b)(1) states that, regarding venue, "[a] civil action may be brought in . . . a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located . . . ." Id. at (b)(1). Defendants' argument rests primarily on a clause in § 1391(c)(2), which states that a defendant is deemed to reside "in any judicial district in which such defendant is subject to the court's personal jurisdiction *with respect to the civil action in question* . . . ." Id. at (c)(2) (emphasis added). Defendants argue that the phrase "with respect to the civil action in question" of § 1391(c)(2) should be construed so as to require that the court have specific jurisdiction over a defendant in order for venue to be proper in the court's district.

   Because, as discussed below, the court concludes that it has specific jurisdiction over defendants, the court need not address whether § 1391(c)(2) requires specific, rather than general, personal jurisdiction.

   2.   Personal Jurisdiction

   When a motion to dismiss challenges the existence of personal jurisdiction, the plaintiff bears the burden of establishing that the court has personal jurisdiction over the defendant. K-V Pharm. Co. v. J. Uriach & CIA, S.A., 648 F.3d 588, 591-92 (8th Cir. 2011); Pangaea, Inc. v. Flying Burrito LLC, 647 F.3d 741, 745 (8th Cir. 2011). If the court does not hold a pretrial evidentiary hearing on the issue of personal jurisdiction, the plaintiff need only make a prima facie showing

---

[9]"There is no special venue provision for FLSA claims, so the general venue provisions of 28 U.S.C. § 1391 govern [such a] case." Bredberg v. Long, 778 F.2d 1285, 1287 (8th Cir. 1985).

of jurisdiction based on the pleadings, affidavits, and exhibits. Miller v. Nippon Carbon Co., Ltd., 528 F.3d 1087, 1090 (8th Cir. 2008); Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991). The evidentiary showing required at this stage is "minimal." K-V Pharm., 648 F.3d at 592. Although the plaintiff bears the burden of proof, the court views the facts in the light most favorable to the plaintiff and resolves all factual conflicts in the plaintiff's favor. Pangaea, 647 F.3d at 745.

Typically, when the court has federal question subject matter jurisdiction over an action, the relevant constitutional limits on the court's power to exercise personal jurisdiction stem from the Due Process Clause of the Fifth Amendment. Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd., 484 U.S. 97, 104 (1987). However, for the court's exercise of personal jurisdiction to be proper, "[t]here must also be a basis for the defendant's amenability to service of summons." Id.

Under Federal Rule of Civil Procedure 4, serving a summons "establishes personal jurisdiction over a defendant . . . when authorized by a federal statute." Fed. R. Civ. P. 4(k)(1)(C). When the relevant federal statute is silent as to service of process, the court must instead look to the forum state's long-arm statute.[10] Fed. R. Civ. P. 4(k)(1)(A) (serving a summons establishes personal jurisdiction over a defendant who is subject to the jurisdiction of the courts of the state in which the district court sits); Fed. R. Civ. P. 4(e)(1)[11] (when the relevant federal statute is silent, service may be effectuated in accordance with the law of the state in which the district court sits); e.g., Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A., 623 F.3d 440, 443 (7th Cir. 2010); uBID, Inc. v. GoDaddy Grp., Inc., 623 F.3d 421, 425 (7th Cir. 2010); Sunward Elecs.,

---

[10]This is not a situation in which the defendants are "not subject to jurisdiction in any state's courts of general jurisdiction." Fed. R. Civ. P. 4(k)(2).

[11]The standards of Rule 4(e)(1) are applicable to corporations pursuant to Rule 4(h)(1)(A). See Fed. R. Civ. P. 4(h)(1)(A)(stating that a corporation can be served "in the manner prescribed by Rule 4(e)(1) for serving an individual").

Inc. v. McDonald, 362 F.3d 17, 22 (2d Cir. 2004); Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 626-27 (11th Cir. 1996); Wallace v. Mathias, ___ F. Supp. 2d ___, 2012 WL 1807334, at *4-6 (D. Neb. May 17, 2012).

Because the FLSA is silent as to service of process, the court can exercise personal jurisdiction only to the extent permitted by Missouri's long-arm statute and the Due Process Clause of the Fourteenth Amendment.[12] Lovett v. Sanderson, 184 F.3d 819, 1999 WL 500691, at *1 (5th Cir. 1999); Aviles v. Kunkle, 978 F.2d 201, 203-04 (5th Cir. 1992); Wallace, 2012 WL 1807334, at *6; Wang v. Schroeter, No. 11-10009-RWZ, 2011 WL 6148579, at *4 (D. Mass. Dec. 9, 2011); In re Enter. Rent-A-Car Wage & Hour Emp. Practices Litig., 735 F. Supp. 2d 277, 307-08 (W.D. Pa. 2010).

### i. Due Process Clause

The Due Process Clause requires that there be sufficient minimum contacts between the defendant and the forum state, "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " J. McIntyre Mach., Ltd. v. Nicastro, ___ U.S. ___, 131 S. Ct. 2780, 2787 (2011) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). These minimum contacts must arise because the defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958); accord Pangaea, 647 F.3d at 745. This "ensures that a defendant will not be haled into a jurisdiction solely as the result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third parson." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (citations omitted).

The Eighth Circuit has established a five-factor test to determine whether a defendant has sufficient minimum contacts with the forum state so as to confer personal jurisdiction:

---

[12]This is "the same personal jurisdiction inquiry, and concomitant 'minimum contacts' analysis" as when the court exercises diversity of citizenship subject matter jurisdiction. Wang v. Schroeter, No. 11-10009-RWZ, 2011 WL 6148579, at *4 (D. Mass. Dec. 9, 2011).

> (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts; (3) the relationship of the cause of action to the contacts; (4) the interest of [the forum state] in providing a forum for its residents; and (5) the convenience or inconvenience to the parties.

Johnson v. Arden, 614 F.3d 785, 794 (8th Cir. 2010).  Although "[t]he first three factors are primary factors[] and the remaining two factors are secondary factors," id., the court should "look at all of the factors and the totality of the circumstances in deciding whether personal jurisdiction exists."  K-V Pharm., 648 F.3d at 592-93.

"The third factor distinguishes whether the jurisdiction is specific or general."  Johnson, 614 F.3d at 794.  Specific jurisdiction arises "when a defendant, through its contacts with the forum, purposefully avails itself of the privilege of conducting business in the forum," and the plaintiff's claim "aris[es] out of or relat[es] to" the defendant's contacts with the forum.  Pangaea, 647 F.3d at 745-46 (citations omitted).  General jurisdiction exists when a defendant has " 'continuous and systematic' " contacts with the forum state so as "to render [the defendant] essentially at home in the forum State."  Goodyear Dunlop Tires Operations, S.A. v. Brown, ___ U.S. ___, 131 S. Ct. 2846, 2851 (2011) (quoting Int'l Shoe, 326 U.S. at 317).

The court concludes that defendants have sufficient minimum contacts with Missouri, such that the court's exercise of personal jurisdiction over defendants comports with due process.  Although plaintiff was originally an Ohio resident when defendants hired him, he became a Missouri resident during a portion of the relevant time period in which he was allegedly wrongfully denied certain wages. (Doc. 12-2.)  At least 13 of defendants' other current SBCs are also Missouri residents. (Doc. 12-1 at ¶ 27.)

While minimum contacts cannot derive solely from a plaintiff's unilateral action, Burger King, 471 U.S. at 475, defendants in this case are alleged to transact business nationwide, including in Missouri. (Doc. 1 at ¶¶ at 4-5, 8; Doc. 12-1 at ¶ 4.)  Defendants' SBCs travel to defendants' clients nationwide, including in Missouri, to perform consulting services.  (Id. at ¶¶ 7-9.)  Plaintiff's claim arises, in

part, from defendants' alleged failure to pay him wages for his time working, among other places, in Missouri.[13]  (Id. at ¶¶ 10, 25-34.)

In addition, Missouri has an interest in adjudicating allegations of labor law violations occurring within its borders and to the detriment of its residents.  As discussed above, at this stage of the proceedings, litigating this action in Missouri is convenient for plaintiff and not overly inconvenient to defendants; the convenience of the parties, at this time, is neutral.  K-V Pharm., 648 F.3d at 595 (the convenience-to-the-parties factor was "neutral" where the potential inconvenience would be the same for either party depending on where the trial would be held).

In short, defendants hired Missouri residents as employees, conducted business in Missouri, registered with the Missouri Secretary of State, and appointed an agent for service of process in Missouri.[14]

---

[13]At the hearing, defendants sought dismissal of GPS USA, Inc. and Integrated Business Analysis, Inc., because these defendants were not plaintiff's employer.  However, the complaint alleges that "[p]laintiff was formerly employed as an SBC by [d]efendants" and makes all allegations against all defendants.  (Doc. 1 at ¶ 2); see also n.1.  At this stage of the proceedings, the court "look[s] at the facts in the light most favorable to [plaintiff], and resolve[s] all factual conflicts in favor of [plaintiff]."  Pangaea, 647 F.3d at 745.  Thus, the allegations of the complaint are sufficient at this time as to all defendants.

[14]The parties dispute whether defendants consented to the exercise of personal jurisdiction by virtue of registering with the Missouri Secretary of State and appointing an agent for service of process in Missouri.  (Doc. 18-1.)  In applying Minnesota's long-arm statute, the Eighth Circuit held that such conduct constituted consent to personal jurisdiction.  Ytuarte v. Gruner & Jahr Printing and Pub. Co., 935 F.2d 971, 973 (8th Cir. 1991); Knowlton v. Allied Van Lines, 900 F.2d 1196, 1200 (8th Cir. 1990).  Missouri courts have not yet decided whether such conduct, without more, should be construed as consenting to the exercise of personal jurisdiction.  See State ex rel. K-Mart Corp. v. Holliger, 986 S.W.2d 165, 168 (Mo. 1999) (en banc) (declining to "address the issue of whether registration of a foreign corporation and designation of an agent for service of process, without more, is always sufficient to confer jurisdiction").  That said, then-Chief Judge Howard Sachs of the United States District Court for the Western District of Missouri has held that "a foreign corporation's appointment of an agent for service of process constitutes the consent of that corporation to submit to jurisdiction of the courts of Missouri."  Koch Supplies, Inc. v. Charles Needham Indus., No. 86-1330-CV-W-9-6, 1990 WL 274485, at *3 (W.D. Mo.
(continued...)

(Doc. 18-1.) Given the extent of their contacts with Missouri, defendants could have "reasonably anticipate[d] being haled into court [here]." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). In light of defendants' contacts with Missouri, the exercise of personal jurisdiction over them comports with due process.

Having found that the exercise of personal jurisdiction comports with due process, the court turns to whether it has specific or general jurisdiction over defendants.

### a. Specific Jurisdiction

"[A] prima facie case of specific personal jurisdiction can only be established if [the defendant] 'has purposefully directed its activities at [the forum state's] residents,' and the claim of th[e] suit either 'arises out of' or 'relates to' these activities." Lakin v. Prudential Sec., Inc., 348 F.3d 704, 707 (8th Cir. 2003) (quoting Burger King, 471 U.S. at 472)). "In Missouri, specific personal jurisdiction is authorized only to the extent that the cause of action arose out of an activity covered by Missouri's long-arm statute." Viasystems, 646 F.3d at 593 (citation omitted). "[I]f a defendant commits any one of the acts specified in the long-arm statute, the statute will be interpreted 'to provide for jurisdiction, within the specific categories enumerated in the statute, to the full extent permitted by the Due Process Clause.' " Id. (quoting State ex rel. Metal Serv. Ctr. of Ga., Inc. v. Gaertner, 677 S.W.2d 325, 327 (Mo. 1984) (en banc)).

Missouri's long-arm statute, Mo. Rev. Stat. § 506.500.1, authorizes the exercise of personal jurisdiction over an entity that transacts business in Missouri when the cause of action arises from such transaction. Mo. Rev. Stat. § 506.500.1(1). "The statute is construed broadly, such that a single transaction can justify jurisdiction if it

---

[14](...continued)
Nov. 14, 1990).
Because the court concludes that it has specific jurisdiction over defendants based on their contact with Missouri and based on plaintiff's claim, the court need not resolve this issue.

is the transaction sued upon." Singh v. M/S Crompton Greaves Ltd., No. 4:11 CV 1207 SNLJ, 2011 WL 5833969, at *6 (E.D. Mo. Nov. 18, 2011).

The court concludes that plaintiff's claim arises out of defendants' contacts with Missouri, such that the court has specific jurisdiction over defendants in this action. As previously noted, defendants transact business nationwide, including in Missouri. (Doc. 1 ¶¶ at 4-5, 8; Doc. 12-1 at ¶ 14.) Plaintiff's claim arises from defendants' alleged failure to pay wages for his time spent working, among other places, in Missouri. (Id. at ¶¶ 25-34.) Because plaintiff's claim arise out of defendants' business transactions in Missouri, that is, defendants' alleged failure to pay plaintiff wages for work performed in Missouri, the Missouri long-arm statute authorizes the exercise of personal jurisdiction over defendants in this action.

In similar circumstances, other courts have found that employers' actions gave rise to specific jurisdiction. Compare Burris v. Bangert Computer Sys., Inc., No. 2:09-cv-201-FtM-29DNF, 2009 WL 3256477, at *4 (M.D. Fla. Oct. 7, 2009) (Florida court had specific jurisdiction over the Iowa employer in an FLSA action where the employee was a Florida resident and worked primarily in Florida, even though the employer conducted no business in Florida); Chao v. Benitez Drywall, LLC, Civil Case No. H-06-2762, 2007 WL 781760, at *4-5 (S.D. Tex. Mar. 12, 2007) (Texas court had specific jurisdiction in an FLSA action over the Mississippi employer where the employees were Texas residents and the employer communicated with the employees about work for which the employees sought overtime wages while they were in Texas) with Lovett, 1999 WL 500691, at *3 (Louisiana court did not have specific jurisdiction in an FLSA action where the employers "did not engage in any activity within Louisiana that affected that state's residents" and the employers' only contact with Louisiana was that the employers' sole shareholder was a Louisiana resident who recommended the overtime wage policy at issue); Azamar v. Stern, 662 F. Supp. 2d 166, 172 (D.D.C. 2009) (District of Columbia court did not have specific jurisdiction in an FLSA action because the employees' allegedly uncompensated work occurred primarily, if not entirely, in Virginia); Jason v. UNITE HERE, No. C05-820 JLR, 2005 WL 3278004, at *3 (W.D. Wash. Dec. 2, 2005) (Washington court did not

have specific jurisdiction in an FLSA action where no employee worked in Washington and no employee allegedly worked without proper compensation while being a Washington resident).

Defendants argue that the court does not have specific jurisdiction because the wage policy at issue was drafted in Illinois, not Missouri. At least one other court has rejected a similar argument. E.g., Lovett, 1999 WL 500691, at *3 ("[A] foreign corporation's mere adherence to a policy set in a forum state is not the kind of activity encompassed by the doctrine of specific jurisdiction."). To the extent the location of the origination of the wage policy at issue is relevant, it is not determinative of whether the court has specific jurisdiction in either that forum or another.

In this case, plaintiff, a Missouri resident, raises a claim based on defendants' alleged failure to pay him wages for work performed nationwide, including in Missouri. "[A] court may exercise specific jurisdiction over a nonresident defendant when the defendant has purposefully directed its activities at the forum state, and the litigation results from injuries arising out of, or relating to, those activities." Cheyenne Prods., S.A. v. Berry, No. 4:09 CV 166 AGF, 2011 WL 4014368 (E.D. Mo. Sept. 9, 2011). On this basis, the court has specific jurisdiction over defendants in this action.

### ii.  Missouri's Long-Arm Statute

As discussed above, the court has personal jurisdiction over defendants under Missouri's long-arm statute, Mo. Rev. Stat. § 506.500.1, because defendants transacted business in Missouri and those transactions are the basis for plaintiff's claim.  Mo. Rev. Stat. § 506.500.1(1).

### V.  CONCLUSION

In sum, exercising jurisdiction over defendants in this action comports with the Due Process Clause of the Fourteenth Amendment and the Missouri long-arm statute.  As discussed above, defendants conducted business in Missouri by providing consulting services to Missouri clients.  Defendants hired Missouri residents as SBCs, at least one of whom, plaintiff, allegedly worked without compensation in Missouri.  It

is this allegedly uncompensated time that is, at its core, the basis for plaintiff's claim.  Under these circumstances, the court has personal jurisdiction over defendants in this action.

Therefore,

**IT IS HEREBY ORDERED** that the motion of defendants to dismiss for lack of personal jurisdiction (Doc. 10) is denied.

**IT IS FURTHER ORDERED** that the motion of defendants to dismiss for improper venue (Doc. 11) is denied.

**IT IS FURTHER ORDERED** that the motion of defendants to transfer venue (Doc. 13) is denied without prejudice.

 /S/    David D. Noce  
**UNITED STATES MAGISTRATE JUDGE**

Signed on May 31, 2012.